No. 25-30566

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

LANDRY'S, LLC; GOLDEN NUGGET LAKE CHARLES, LLC; RIVERBOAT CORP. OF MISS.; GOLDEN NUGGET ATLANTIC CITY, LLC; GNLV, LLC; GNL, LLC; LANDRY'S SEAFOOD HOUSE-NEW ORLEANS, INC.; LANDRY'S SEAFOOD HOUSE-JAX, INC.; GOLDEN NUGGET, LLC; FERTITTA ENTERTAINMENT, INC.; FERTITTA HOSPITALITY, LLC; 1600 WEST LOOP SOUTH, LLC; MORTON'S OF CHICAGO/ROSEMONT, INC.; LANDRY'S SEAFOOD HOUSE-MISSOURI, INC.; BILL'S BAR & BURGER RC, LLC; RAINFOREST CAFE, INC.; AND DEL FRISCO'S OF GEORGIA, LLC,
*Plaintiffs-Appellees*,

v.

CHUBB BERMUDA INSURANCE LTD.,
*Defendant-Appellant*.

Expedited Appeal from the United States District Court
for the Western District of Louisiana
Honorable James D. Cain, Jr.
No. 25-cv-01175

## APPELLANT'S OPENING BRIEF

Jonathan D. Hacker
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5285
jhacker@omm.com

Paul R. Koepff
Mina M. Beshara
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
Telephone: 212-710-3900
paul.koepff@clydeco.us
mina.beshara@clydeco.us

Judy Y. Barrasso
Janelle E. Sharer
Aaron M. Steeg
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone:  504-589-9700
Facsimile:  504-589-9701
jbarrasso@barrassousdin.com
jsharer@barrassousdin.com
asteeg@barrassousdin.com

*Attorneys for Defendant-Appellant Chubb Bermuda Insurance Ltd.*

# CERTIFICATE OF INTERESTED PERSONS

No. 25-30566, *Landry's, LLC v. Chubb Bermuda Insurance Ltd.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**District Court Judge**
1.    Honorable James D. Cain, Jr., United States District Court for the Western District of Louisiana

**Magistrate Judge**
2.    Honorable Thomas P. LeBlanc, United States District Court for the Western District of Louisiana

**Defendant-Appellant and Related Entities**
3.    Chubb Bermuda Insurance Ltd.
4.    Chubb Group Management and Holdings Ltd.
5.    Chubb Limited (NYSE: CB)

**Counsel for Defendant-Appellant**
6.    Jonathan D. Hacker
7.    Judy Y. Barrasso
8.    Janelle E. Sharer
9.    Aaron M. Steeg
10.   Paul R. Koepff
11.   Mina M. Beshara
12.   Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.
13.   Clyde & Co. US LLP
14.   O'Melveny & Myers LLP

**Plaintiffs-Appellees and Related Entities**
15.   1600 West Loop South LLC
16.   Bills Bar & Burger RCLLC
17.   Del Friscos of Georgia LLC

18.   Fertitta Entertainment Inc.
19.   Fertitta Hospitality LLC
20.   GNL LLC
21.   GNLV LLC
22.   Golden Nugget Atlantic City LLC
23.   Golden Nugget LLC
24.   Golden Nugget Lake Charles LLC
25.   Landry's Seafood House-Jax Inc.
26.   Landry's Seafood House-New Orleans, Inc.
27.   Landry's LLC
28.   Landry's Seafood House-Missouri Inc.
29.   Mortons of Chicago/Rosemont Inc.
30.   Rainforest Café Inc.
31.   Riverboat Corp. of Mississippi

**Counsel for Plaintiffs-Appellees**
32.   Christopher P. Ieyoub
33.   V. Ed McGuire, III.
34.   Peyton Robertson
35.   Robert L. Salim
36.   Ulysses Gene Thibodeaux
37.   Plauché, Smith & Nieset, LLC
38.   Salim-Beasley, LLC
39.   Delphin Law Offices PLC


*/s/ Judy Y. Barrasso*
Judy Y. Barrasso

*Attorney for Defendant-Appellant*
*Chubb Bermuda Insurance Ltd.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Chubb Bermuda Insurance Ltd. ("Chubb Bermuda") respectfully requests that oral argument proceed as scheduled on December 2, 2025. Oral argument would help the Court better understand the proceedings in the English High Court, which has temporarily (and properly) enjoined Appellees from pursuing their Louisiana action while it resolves the enforceability of the international arbitration agreement in the Chubb Bermuda insurance policy. Oral argument would also clarify how Appellees consented several times to go forward with the English High Court proceedings and participated in those proceedings for eight months before suddenly and without any legitimate basis reversing course and obtaining an *ex parte* temporary restraining order (later converted into a preliminary injunction) that purports to preclude Chubb Bermuda from going forward with the English High Court proceedings and override the orders of the English High Court to which Appellees had expressly consented.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. i

Statement Regarding Oral Argument .................................................... iii

Table of Contents .................................................................................. iv

Table of Authorities ............................................................................. vi

Jurisdictional Statement ........................................................................1

Statement of the Issues..........................................................................4

Statement of the Case............................................................................5

    I.    Appellees purchase an insurance policy from Chubb Bermuda that requires arbitration of all disputes in London, England................7

    II.    After improperly filing suit against Chubb Bermuda in Louisiana, Appellees consent to proceed exclusively before the English High Court..............................................................................8

    III.    Chubb Bermuda is wrongfully enjoined from continuing to litigate the Interim ASI in the English High Court. ...........................11

Summary of the Argument....................................................................13

Argument...............................................................................................16

    I.    The district court erred by issuing an international anti-suit injunction where the movant had no likelihood of success as a matter of law. .......................................................................................18

        A.    Louisiana's anti-arbitration statute is preempted by Chapter 2 of the FAA, which mandates prompt enforcement of the Policy's international arbitration agreement.............................19

        B.    Settled principles of international comity precluded the district court from denying enforcement of the English High Court's Interim ASI. ................................................23

1.  No inequitable hardship results from litigating in England. ....................................................26

2.  The English High Court proceedings further, rather than frustrate, resolution of this dispute. ........................27

3.  There are significant differences between this action and the English High Court proceedings.......................28

C.  Appellees cannot succeed on the merits because they failed to prove personal jurisdiction over Chubb Bermuda......29

II.  The remaining traditional preliminary injunction factors also weigh strongly against a preliminary injunction................................33

Conclusion ....................................................................................35

Certificate of Service ........................................................37

Certificate of Compliance ........................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Master Maint. & Const. Inc.*,
    452 F.3d 373 (5th Cir. 2006) ........................................................3, 21

*Adams v. Unione Mediterranea Di Sicurta*,
    220 F.3d 659 (5th Cir. 2000) ...............................................................30

*Anibowei v. Morgan*,
    70 F.4th 898 (5th Cir. 2023) ...............................................................33

*Beiser v. Weyler*,
    284 F.3d 665 (5th Cir. 2002) .................................................................2

*Bethell v. Peace*,
    441 F.2d 495 (5th Cir. 1971) ...............................................................23

*Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.*,
    2012-0239 (La. 10/16/12), 101 So. 3d 22 .....................................................22

*Bufkin Enterprises, LLC v. Indian Harbor Insurance Co.*,
    96 F.4th 726 (5th Cir. 2024) ...............................................................21

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................... 31, 32

*Certain Underwriters at Lloyd's, London v. 3131 Veterans Blvd LLC*,
    136 F.4th 404 (2d Cir. 2025) ...............................................................21

*Def. Distributed v. Grewal*,
    971 F.3d 485 (5th Cir. 2020) ...............................................................30

*Delgado v. Shell Oil Co.*,
    231 F.3d 165 (5th Cir. 2000) .................................................................3

*Ethridge v. Samsung SDI Co.*,
    137 F.4th 309 (5th Cir. 2025) ...........................................................30

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
    66 F.4th 578 (5th Cir. 2023) .................................................... *passim*

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019) ...........................................................32

*In re Dinnan*,
    625 F.2d 1146 (5th Cir. 1980) .........................................................27

*In re Unterweser Reederei, Gmbh*,
    428 F.2d 888 (5th Cir. 1970) ...........................................................23

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
    631 F.3d 1133 (9th Cir. 2011)............................................................3

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) .........................................................................27

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ...................................................... 23, 27

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) .................................................... *passim*

*Lim v. Offshore Specialty Fabricators, Inc.*,
    404 F.3d 898 (5th Cir. 2005) ...........................................................21

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .............................................................................23

*McDonnel Group, LLC v. Great Lakes Insurance SE, UK Branch*,
    923 F.3d 427 (5th Cir. 2019) ...........................................................21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .................................................................. 20, 34

*Monkton Ins. Ltd. Servs. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ............................................................32

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .............................................................................20

*Munaf v. Geren*,
  553 U.S. 674 (2008) .........................................................................17

*MWK Recruiting Inc. v. Jowers*,
  833 F. App'x 560 (5th Cir. 2020) .....................................................26

*NAACP v. Tindell*,
  95 F.4th 212 (5th Cir. 2024) ............................................................29

*Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.*,
  2024-00449 (La. 10/25/24), 395 So. 3d 717 ...................................21

*Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*,
  587 F.3d 714 (5th Cir. 2009) ...........................................................21

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) .........................................................................20

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*,
  767 F.2d 1140 (5th Cir. 1985) .........................................................21

*Shambaugh & Son, LP v. Steadfast Ins. Co.*,
  91 F.4th 364 (5th Cir. 2024) ............................................................32

*Stemcor USA Inc. v. CIA Siderurgica*,
  927 F.3d 906 (5th Cir. 2019) .......................................................1, 2

*Tai Ping Ins. Co. v. M/V Warschau*,
  731 F.2d 1141 (5th Cir. 1984) .........................................................20

*Texas Brine Co. v. Am. Arb. Ass'n, Inc.*,
  955 F.3d 482 (5th Cir. 2020) .............................................................3

*Tidewater Oil Co. v. United States*,
    409 U.S. 151 (1972) ........................................................................4

*Topletz v. Skinner*,
    7 F.4th 284 (5th Cir. 2021) ..........................................................27

*United States v. Abbott*,
    110 F.4th 700 (5th Cir. 2024) ......................................................17

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................31

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*,
    80 F.4th 536 (5th Cir. 2023) ........................................................30

**Constitutional Provisions**

U.S. Const. art. VI ...........................................................................34

**Statutes**

9 U.S.C. § 203 ...................................................................................1

9 U.S.C. § 205 ...............................................................................1, 2

28 U.S.C. § 1292 ...............................................................................4

28 U.S.C. § 1446 ...............................................................................3

La. Civ. Code art. 9 .........................................................................22

La. Stat. Ann. § 13:3201 .................................................................30

La. Stat. Ann. § 22:868 ...............................................................20, 22

**Federal Rules**

Fed. R. App. P. 4................................................................................4

## JURISDICTIONAL STATEMENT

This action—which directly impacts ongoing proceedings before the English High Court and jeopardizes resolution of those proceedings at the final hearing scheduled for January 2026, all in contravention of the parties' international arbitration agreement—began in Louisiana state court and was properly removed under 9 U.S.C. § 205 to the United States District Court for the Western District of Louisiana, which had subject-matter jurisdiction pursuant to Section 203 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 203. ROA.17-20. Section 203 provides federal courts with "original jurisdiction" over any "action or proceeding falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") "regardless of the amount in controversy." 9 U.S.C. § 203. This Court has established a "two-step jurisdictional inquiry" to determine whether Section 203 applies: "(1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement." *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 909 (5th Cir. 2019). Both steps are met here.

First, the arbitration agreement between Chubb Bermuda and Appellees "falls under the Convention" because it (1) is an agreement in writing, (2) provides for arbitration in England, which is a Convention signatory, (3) arises out of the commercial legal relationship between Appellees and Chubb Bermuda, and (4)

includes at least one party (Chubb Bermuda) that is not an American citizen. *See id.* at 909–10 ("For an arbitration agreement to be covered by the Convention, four requirements must be met: (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen."). Second, this dispute "relates to" the arbitration agreement because Chubb Bermuda is relying upon the arbitration agreement to require Appellees to resolve their coverage dispute in binding arbitration and thus to preclude Appellees from pursuing this action. *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.").

As for removal, Section 205 of the FAA allows for removal of any action falling under the Convention "at any time before the trial thereof." 9 U.S.C. § 205. And there was no adjudication of the merits of Appellees' action against Chubb Bermuda prior to removal. To be sure, there *was* a state-court trial of Appellees' claims against *other* insurers. But that occurred before Chubb Bermuda was even added as a defendant to the case. And regardless, as used in Section 205, "the 'trial thereof' can only refer to an adjudication of the claims asserted against [the removing

party] in [the] state court." *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1139 (9th Cir. 2011); *cf. Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006) (explaining that Section 205 is "one of the broadest removal provisions . . . in the statute books" and "[s]o generous . . . that the general rule of construing removal statutes strictly against removal cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court" (quotation marks and citation omitted)). So, despite any prior adjudication of Appellees' claims against *other* parties, Appellees' claims against Chubb Bermuda—which were added via post-trial amended petition—"had not yet been adjudicated by the [Louisiana] state court" at the time of removal, and therefore "the action was timely removed under § 205." *Infuturia Glob. Ltd.*, 631 F.3d at 1139.

Removal was proper even though Chubb Bermuda has never been properly served. The notice of removal may be filed "after the receipt by the defendant, through service *or otherwise*, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1) (emphasis added). The "'or otherwise' language . . . consciously reflect[s] a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000); *see also Texas Brine Co.*

*v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485–87 (5th Cir. 2020) (approving removal prior to service).

Finally, this Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) to review the grant of a preliminary injunction. *Tidewater Oil Co. v. United States*, 409 U.S. 151, 153 (1972). The district court entered the preliminary injunction on September 30, 2025 (ROA.977-83) and Chubb Bermuda timely filed a notice of appeal on October 2, 2025 (ROA.984-86). *See* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

The district court granted a preliminary injunction purporting to bar Chubb Bermuda from engaging in further proceedings before the English High Court to determine the validity of the parties' arbitration agreement, thereby preventing Chubb Bermuda from enforcing the interim antisuit injunction issued by the English High Court. The questions presented are:

1.    Whether Appellees can establish that Chubb Bermuda should be enjoined from engaging in further proceedings before the English High Court to enforce the parties' arbitration agreement where:

A.    Appellees' only basis for enjoining the English High Court proceedings is Louisiana's anti-arbitration statute, which this Court has repeatedly held to be preempted by Chapter 2 of the FAA, and which, in any event, is inapplicable on its own terms;

B.    The injunction conflicts with the English High Court's interim antisuit injunction—a judicial act of a foreign sovereign—and therefore violates settled principles of international cooperation and comity; and

C.    Chubb Bermuda is not subject to personal jurisdiction in Louisiana.

2.    Whether the district court erred in relying on the other traditional preliminary injunction factors, which do not apply in the context of an international anti-suit injunction, and which in any event weigh strongly against issuance of a preliminary injunction here because: Appellees would suffer no irreparable injury given their explicit, months-long commitment to litigate in the English High Court and comply with the English High Court's injunction; the public interest strongly favors enforcing the United States' obligations under a critical, longstanding international treaty; and the equities favor enforcing the contractual agreement freely entered into by Appellees, who are highly sophisticated business enterprises.

## STATEMENT OF THE CASE

The factual history of this case is straightforward. Appellees purchased an insurance policy from Chubb Bermuda in Bermuda. That policy required arbitration of all disputes in London, England. In violation of that requirement, Appellees sued Chubb Bermuda in Louisiana state court. In response, Chubb Bermuda initiated proceedings in, and obtained an interim antisuit injunction from, the English High

Court aimed at enforcing the arbitration provision. Over the next eight months, Appellees agreed to stay the Louisiana proceedings, consented to litigate in the English High Court, and, indeed, actually litigated in the English High Court. Then, suddenly and for no legitimate reason, Appellees reneged on their promises and conducted an end-run around the English High Court's authority, flouting the judicial decrees of that foreign sovereign by obtaining an *ex parte* temporary restraining order precluding Chubb Bermuda from continuing to litigate before the English High Court. After Chubb Bermuda removed the action to the United States District Court for the Western District of Louisiana, Appellees obtained another *ex parte* temporary restraining order, which was converted into the preliminary injunction at issue in this appeal.

The district court's issuance of the preliminary injunction was an abuse of discretion because the Appellees came nowhere close to establishing that the English High Court proceedings, which are aimed at enforcing the parties' arbitration agreement, are somehow improper. Appellees in fact have no prospect of success on that claim, for multiple reasons, including: because this Court has *repeatedly* ruled—including in an en banc decision—that Chapter 2 of the FAA, which implements the Convention, preempts the Louisiana anti-arbitration statute in the context of international arbitration agreements; because settled rules of international comity mandate respect for the English High Court's injunction and enforcement of

Appellees' prior agreements to resolve the validity of the arbitration agreement in that forum; and because Appellees did not establish that Louisiana courts can permissibly exercise personal jurisdiction over Chubb Bermuda, a foreign corporation.

The preliminary injunction is not only legally insupportable, but reversal is urgently needed to ensure that the English High Court proceedings can adhere to the existing schedule, including a January 26, 2026 final hearing that Appellees agreed to and that the parties have spent months preparing for. This Court should vacate the preliminary injunction immediately so that Chubb Bermuda and Appellees can resume litigating before the English High Court and should also remand with specific instructions that the district court either stay this action pending the English High Court's final judgment, as Appellees previously agreed, or dismiss for lack of personal jurisdiction.

## I.     Appellees purchase an insurance policy from Chubb Bermuda that requires arbitration of all disputes in London, England.

Appellees are each part of a multi-billion-dollar corporate conglomerate headquartered in Texas that owns and operates restaurants, hotels, casinos, and entertainment destinations across the United States. Their properties are covered by various insurance policies with different insurers, including the May 2019 property insurance policy with Chubb Bermuda at issue in this case (the "Policy").

Chubb Bermuda is a Bermudian insurance company that only conducts business in Bermuda. It underwrites, issues, and delivers its insurance policies exclusively in Bermuda, where the policyholder must use a Bermuda broker in dealing with Chubb Bermuda. ROA.725-27. That is true with respect to the Policy here, which was issued by Chubb Bermuda at its offices in Hamilton, Bermuda and then delivered to and paid for by Appellees' Bermudian broker—Bowring March (Bermuda) Ltd.—in Hamilton, Bermuda. ROA.726-30.

The Policy contains an arbitration agreement, which provides, in relevant part:

> Any dispute arising out of or relating to this Policy, or the breach thereof, shall be fully and finally determined in London, England under the provisions of the Arbitration Act of 1996 (as amended or supplemented) by an Arbitration Board composed of three arbitrators. Each arbitrator shall be an active Queens Counsel or retired judge of the English High Court or Court of Appeal familiar with insurance and the Act. All matters relating to the existence of the agreement to arbitrate and the selection of arbitrators shall be determined under the laws of England and Wales.

ROA.731.

## II.  After improperly filing suit against Chubb Bermuda in Louisiana, Appellees consent to proceed exclusively before the English High Court.

In July 2020, Appellees filed two separate lawsuits against many of their insurers—but *not* Chubb Bermuda—in the 14th Judicial District Court for Calcasieu Parish, Louisiana for alleged losses related to the COVID-19 pandemic. ROA.545-72. After those cases were consolidated, the parties engaged in over four years of litigation, ultimately settling mid-trial in December 2024. After settling with their

other insurers, Appellees were permitted to amend their petition on January 13, 2025 to add Chubb Bermuda as a defendant in the 14th Judicial District Court action, alleging that Chubb Bermuda breached its obligations under the Policy. ROA.328-32.

Because the Policy requires "[a]ll matters relating to the existence of the agreement to arbitrate . . . be determined under the laws of England and Wales," ROA.731, Chubb Bermuda promptly filed an application for an antisuit injunction with the English High Court, the proper venue, seeking to enjoin Appellees from improperly litigating this case in Louisiana and to compel them to answer for their breach of the arbitration agreement in London. On January 31, 2025, the English High Court granted an interim antisuit injunction (the "Interim ASI"), which prohibits Appellees from pursuing their claims against Chubb Bermuda in Louisiana while the English High Court determines whether to enforce the Policy's arbitration provision. ROA.585-91.

Two weeks later, Appellees and Chubb Bermuda signed a stipulation, which was entered into the record in this case, agreeing that Chubb Bermuda did not need to answer or otherwise respond to the Appellees' amended petition until five business days after the English High Court ruled on whether the parties' dispute is subject to arbitration. ROA.376-80. This stipulation effectively stayed the state-court lawsuit pending resolution of the English High Court proceeding.

On February 14, 2025, after another hearing in the English High Court, the Appellees consented to an order continuing the Interim ASI. ROA.599-603. On March 27, Appellees again consented to an order further continuing the Interim ASI. ROA.608-11. And on July 25, the English High Court again extended the Interim ASI until resolution of the dispute and entered a scheduling order for the parties to submit evidence in advance of a final hearing on January 26, 2026. ROA.612-15.

In accordance with this schedule and their agreement to litigate in the English High Court, Appellees filed their evidence with the English High Court on August 13, 2025, in which they challenged the jurisdiction of the English High Court and requested that the Interim ASI be set aside. *See* ROA.539 (¶ 28).[1] Thereafter, Chubb Bermuda was scheduled to submit its reply evidence to the English High Court on September 24, 2025, and Appellees were scheduled to submit a final round of evidence on October 3, 2025. ROA.543 (¶ 44). The parties were (and still are) scheduled for a final hearing on January 26, 2026. *Id.*

Rather than continue in good faith towards a prompt and orderly resolution in England, as they had repeatedly agreed to do, Appellees chose to sow chaos. Two days after filing their evidence with the English High Court, Appellees went to Louisiana state court and, without providing any notice to Chubb Bermuda and in

---

[1]    Although Appellees' evidentiary submission was originally due August 8, Chubb Bermuda agreed to Appellees' request for an extension. ROA.539 (¶ 27).

clear violation of the Interim ASI and the February stipulation, filed a motion for an *ex parte* temporary restraining order enjoining further proceedings in the English High Court. ROA.391-98.

## III.  Chubb Bermuda is wrongfully enjoined from continuing to litigate the Interim ASI in the English High Court.

On August 15, 2025, mere hours after Appellees filed their motion and without providing Chubb Bermuda any opportunity to oppose, the 14th Judicial District Court granted an *ex parte* temporary restraining order enjoining Chubb Bermuda "from pursuing or enforcing any proceedings in the High Court." ROA.495. Chubb Bermuda immediately removed the case to the Western District of Louisiana. ROA.17-20. On September 2, the district court entered its own *ex parte* temporary restraining order, again upon Appellees' motion without providing Chubb Bermuda prior notice or the opportunity to be heard as the rules required, enjoining Chubb Bermuda "from pursuing or enforcing any proceedings in the High Court." ROA.321-22. Over Chubb Bermuda's opposition (ROA.911-20) and less than 24-hours before the scheduled September 16 preliminary-injunction hearing, the district court cancelled the hearing and extended the temporary restraining order through September 30 (ROA.924-25), modifying it at Chubb Bermuda's request to allow Chubb Bermuda to inform the English High Court of the temporary restraining order and to apply for an extension of its September 24 deadline to file evidence in reply (ROA.926-30).

11

On September 30, 2025, the parties appeared for a hearing on Appellees' motion for a preliminary injunction. Throughout the hearing, the district court was dismissive of the English High Court's authority, explaining "I don't really have much respect for" the Interim ASI, "I don't really care what [the English High Court's] deadlines are," and "I certainly understand better why the founding fathers signed the Declaration of Independence." ROA.993, 998-99. The district court made equally clear that it had no intention of enforcing the Convention, refusing to even "talk about the convention today." ROA.1014.

Shortly after the hearing, the district court converted the temporary restraining order into a preliminary injunction. ROA.977-83. In doing so, the district court ignored that the Convention, as implemented by the FAA, and multiple decisions of this Court—including an en banc decision—all require dismissing or staying an action that involves an international arbitration agreement, like the one at issue here. Moreover, the district court disregarded this Court's decisions regarding the obligation to enforce the judicial acts of a foreign sovereign—like the Interim ASI— and made wholly erroneous legal determinations as to why the Interim ASI should not bind the Appellees. The district court's only basis for issuing the preliminary injunction was that the court needed time to decide jurisdictional issues.

Chubb Bermuda promptly appealed, ROA.984-86, and this Court granted Chubb Bermuda's motion to expedite so that this case can be moved to arbitration

and the English High Court's orders enforced as quickly as possible, ECF 47-1. While the English High Court has extended Chubb Bermuda's deadline to file evidence in reply to seven days after the expiration of any injunction preventing Chubb Bermuda from proceeding in the English High Court, the January 26, 2026 date for the final hearing remains unchanged.

## SUMMARY OF THE ARGUMENT

1.     The FAA represents a strong federal policy in favor of enforcing arbitration agreements. Chapter 2 of the FAA explicitly implements and enforces the Convention, an international treaty adopted decades ago by the United States. Where an arbitration agreement at issue is part of an international commercial contract, the FAA's already-strong policy in favor of arbitration applies with even greater force. The district court disregarded that mandate here, issuing an international antisuit injunction that *prohibits* Chubb Bermuda from continuing to enforce its international arbitration agreement with Appellees in the forum designated by that agreement: the English High Court.

There was no valid basis for the district court's decision. Appellees' only proffered reason for delaying or denying enforcement of the arbitration agreement— that the arbitration provision is invalid under Louisiana law—is foreclosed by multiple decisions of this Court, including an en banc decision, holding that Louisiana's anti-arbitration statute is preempted by Chapter 2 of FAA (which

implements the Convention) and therefore does not apply to international arbitration agreements like the one at issue here.

2.      An international antisuit injunction is an extraordinary remedy that is rarely appropriate because it is fraught with unique concerns of international comity. In observance of these comity principles, the district court should have denied Appellees' request for an antisuit injunction and instead enforced the interim antisuit injunction issued by the English High Court. But the district court, in its own words, did not "have much respect for" the English High Court, nor did it "really care" about the English High Court's prior orders.

To overcome the comity-based rule against interfering with judicial proceedings before a foreign sovereign—which applies with particular force when, as here, the dispute implicates an international treaty to which the United States is a signatory—the foreign action must be "vexatious or oppressive." The English High Court proceedings are not. Appellees contractually agreed to arbitrate all Policy-related disputes in London and then consented—three separate times—to litigate this dispute in the English High Court, including through a stipulation entered in this case. They then actually litigated in the English High Court, submitting their evidence in advance of a final hearing scheduled for January 2026. There is nothing vexatious or oppressive about holding Appellees both to the terms of their contract and to their repeated commitments to abide by that contract, particularly when they

were, in fact, abiding by those commitments for months before suddenly and improperly reversing course.

3.     The district court's international antisuit injunction was invalid for yet another reason: the district court lacked personal jurisdiction over Chubb Bermuda. Chubb Bermuda is incorporated and headquartered in Bermuda and conducts its business—including negotiating, underwriting, issuing, delivering, and adjusting the Policy—exclusively in Bermuda. Accordingly, Chubb Bermuda does not have sufficient minimum contacts with Louisiana for an exercise of personal jurisdiction to comply with Due Process.

4.     On top of its other errors, the district court should have never considered—and then misapplied—the remaining traditional equitable factors for a preliminary injunction too. Appellees suffer no irreparable injury from litigating in the English High Court—the forum to which they expressly and repeatedly consented. The public interest demands that federal courts enforce—not flout—the judicial acts of foreign sovereigns (like the Interim ASI) and the United States' treaties (like the Convention, which mandates prompt enforcement of arbitration agreements in international commercial contracts like the Policy). And any harm to Appellees from litigating in the English High Court is outweighed by the harm to Chubb Bermuda in being deprived of its right to arbitrate while also being enjoined by a court with no personal jurisdiction over it.

**ARGUMENT**

This Court reviews the district court's grant of an international antisuit injunction for abuse of discretion, under which standard "findings of fact are upheld unless clearly erroneous" but "legal conclusions are subject to broad review and will be reversed if incorrect." *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 581 (5th Cir. 2023). Erroneous legal conclusions pervaded the district court's decision-making.

Most fundamentally, it is legal error to grant a preliminary international anti-suit injunction where, as here, the movant cannot establish that the foreign suit is improper, let alone establish a significant likelihood of success on that claim. "To the extent the traditional preliminary injunction test is appropriate," this Court has held, "we only need address whether [the movant] showed a significant likelihood of success on the merits." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 n.19 (5th Cir. 2003). Whether viewed through the likelihood-of-success prism or on its own merits, the propriety of a preliminary international anti-suit injunction "ultimately depends on considerations unique to antisuit injunctions," *id.*, which permit such relief only when the movant proves that the "vexatiousness of the foreign litigation" outweighs "considerations of comity," *Ganpat*, 66 F.4th at 581; *see also Karaha Bodas*, 335 F.3d at 366.

The district court did not actually conduct that required analysis, instead enjoining Chubb Bermuda from litigating the English High Court suit until the court could resolve "jurisdictional questions." ROA.980. But as the U.S. Supreme Court has held, a "difficult question as to jurisdiction is, of course, no reason to grant a preliminary injunction," because such a question "says nothing about the 'likelihood of success on the merits,' other than making such success more *unlikely* due to potential impediments to even reaching the merits." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). It is accordingly "an abuse of discretion" for a district court "to grant a preliminary injunction on the view that the 'jurisdictional issues'" in a case are "tough, without even considering the merits of the underlying [claims]." *Id.* at 690–91.

As shown in Section I.C. below, the jurisdictional issues here actually are not difficult at all, but this Court need not reach them to reverse the preliminary injunction, because the order rests on two other purely legal errors, as shown in Sections I.A. and I.B. *See id.* at 691 ("Adjudication of the merits is most appropriate if the injunction rests on a question of law and it is plain that the plaintiff cannot prevail. In such cases, the defendant is entitled to judgment."); *United States v. Abbott*, 110 F.4th 700, 722–23 (5th Cir. 2024) (Oldham, J., concurring) ("[T]o *reverse* an injunction, there is no order of operations . . . because reversing a preliminary injunction prevents the exercise of judicial power over the defendant—

regardless of whether we base that reversal on the plaintiff's inability to establish jurisdiction, to prove the elements of its claim, etc.").

Because this Court has held that the other traditional preliminary injunction factors are not applicable to international antisuit injunctions, *see Ganpat*, 66 F.4th at 584, the district court erred in citing the "irreparable injury" factor as one basis for an injunction. But even if that factor and others are relevant, *see id.* at 588 (Jones, J., dissenting) ("[A]ny movant for equitable relief[] must ultimately satisfy a four-part test"), they all strongly favor denial of the international antisuit injunction Appellees seek here, as shown in Part II.

Accordingly, this Court should vacate the preliminary injunction and remand with instructions to either stay the case pending resolution of the English High Court proceedings or dismiss for lack of personal jurisdiction.

## I.   The district court erred by issuing an international anti-suit injunction where the movant had no likelihood of success as a matter of law.

An international antisuit injunction is "a particular subspecies of preliminary injunction" that "enjoins persons . . . from prosecuting foreign suits." *Karaha Bodas*, 335 F.3d at 364. This extraordinary remedy is rarely granted, and it should not have been granted here. As noted above, the suitability of this rare and extraordinary relief "depends on considerations unique to antisuit injunctions," which require the movant to prove that the foreign suit is so vexatious and unreasonable as to outweigh the respect for foreign judicial orders required by rules of international comity. *Id.*

at 364 & n.19. For three independent reasons—each a matter of law that this Court reviews *de novo*—Appellees have no prospect of meeting that standard here.

**A.** ***Louisiana's anti-arbitration statute is preempted by Chapter 2 of the FAA, which mandates prompt enforcement of the Policy's international arbitration agreement.***

Appellees are bound by contract to arbitrate this dispute. That contractual obligation is enforceable under the FAA, which also precludes any state court from interfering with the obligation.

The central premise of Appellees' argument for a preliminary injunction is that the English High Court proceedings vexatiously and unreasonably interfere with Appellees' right to litigate the arbitrability of their claims in Louisiana courts—a right secured by Louisiana's anti-arbitration statute. But as this Court has repeatedly held, that statute (and others inconsistent with the Convention) is preempted by Chapter 2 of the FAA. Appellees accordingly have *no* enforceable right to litigate arbitrability in the Louisiana courts—as a matter of controlling federal law, that issue *must* be determined in accordance with the international arbitration agreement Appellees duly entered into. In other words, the English High Court proceedings cannot vexatiously interfere with a lawsuit Appellees are barred from bringing under the FAA. The district court erred as a matter of law in granting the preliminary injunction.

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). And since the United States adopted the Convention in 1970, "that federal policy applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). In fact, "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Thus, "only the most exceptional circumstances will justify any action on the part of a federal court that serves to impede arbitration of an arbitrable dispute." *Tai Ping Ins. Co. v. M/V Warschau*, 731 F.2d 1141, 1146 (5th Cir. 1984). As a matter of law, the existence of Louisiana's anti-arbitration statute, which prohibits arbitration clauses in an "insurance contract delivered or issued for delivery in [Louisiana] and covering subjects located, resident, or to be performed in [Louisiana]," LA. STAT. ANN. § 22:868(A), is *not* the sort of exceptional circumstance that could have justified the district court's preliminary injunction impeding arbitration of the parties' dispute.

In *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, this Court held en banc that the Louisiana anti-arbitration statute is preempted by Chapter 2 of the FAA and therefore inapplicable to international arbitration agreements like the one in the Policy. 587 F.3d 714 (5th Cir. 2009) (en banc). The Court reaffirmed this holding in *McDonnel Group, LLC v. Great Lakes Insurance SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019). Most recently, in *Bufkin Enterprises, LLC v. Indian Harbor Insurance Co.*, the Court reversed the same district court that issued the antisuit injunction at issue here. 96 F.4th 726, 732–32 (5th Cir. 2024).[2] The Convention's unambiguous preemption of Louisiana's anti-arbitration statute, as applied to international arbitration agreements, is dispositive of this appeal.[3]

In addition, and independently, the Louisiana anti-arbitration statute does not apply on its own terms. The statute applies only to policies (1) "delivered or issued

---

[2]    This treatment is not unique to the Louisiana anti-arbitration statute; this Court has made clear that the preemptive force of Chapter 2 of the FAA extends to all Louisiana statutes that are inconsistent with the Convention. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903–06 (5th Cir. 2005) (holding Louisiana statute prohibiting forum-selection clauses in employment contracts was inconsistent with the Convention and thus preempted by Chapter 2 of the FAA); *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 379 (5th Cir. 2006) (Louisiana's direct-action statute); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[T]he Convention must be enforced according to its terms over all prior inconsistent rules of law.").

[3]    The Louisiana Supreme Court's decision in *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.*, 2024-00449 (La. 10/25/24), 395 So. 3d 717, does not change this rule. *See Certain Underwriters at Lloyd's, London v. 3131 Veterans Blvd LLC*, 136 F.4th 404, 410–15 (2d Cir. 2025) (holding that Chapter 2 of the FAA continues to preempt the Louisiana anti-arbitration statute notwithstanding *Police Jury*). *Police Jury* only applies to domestic insurers—not foreign insurers like Chubb Bermuda. *See id.* at 720 (noting that the certified questions concerned only "domestic insurers"). And regardless, this Court's decisions control the issue of federal preemption.

for delivery in this state" and (2) "covering subjects located, resident, or to be performed in this state." LA. STAT. ANN. § 22:868(A). Both requirements must be satisfied for the statute to apply. Here, the Policy was issued and delivered to Appellees in Bermuda, not Louisiana. ROA.726-30. Appellees' suggestion to the district court that the Policy was "delivered or issued" in Louisiana merely because it insures properties in Louisiana (ROA.860) collapses the statute's first requirement into the second and effectively renders the "delivered or issued" requirement meaningless, a result prohibited by Louisiana law governing statutory interpretation. LA. CIV. CODE art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); *Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.*, 2012-0239 (La. 10/16/12), 101 So. 3d 22, 26 ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found").

Because the district court erred as a matter of law in failing to enforce the Policy's arbitration provision, this Court should vacate the preliminary injunction and remand with instructions to stay this case pending resolution of the English High Court proceedings.

### B.    Settled principles of international comity precluded the district court from denying enforcement of the English High Court's Interim ASI.

Appellees were precluded from litigating in Louisiana by the English High Court's Interim ASI, which, as a matter of law, should have been enforced. International anti-suit injunctions are "fraught with 'unique' concerns regarding international comity." *Ganpat*, 66 F.4th at 586 (Jones, J., dissenting) (citing *Karaha Bodas Co.*, 335 F.3d at 363, 364). Accordingly, an international anti-suit injunction may issue only if "the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction" outweighs "the need to defer to principles of international comity." *Karaha Bodas Co.*, 335 F.3d at 366 (quotation marks and citations omitted). This is so rarely the case that this Court has upheld only four international anti-suit injunctions since 1970, one of which was reversed by the Supreme Court. *See Ganpat*, 335 F.3d 357; *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996); *Bethell v. Peace*, 441 F.2d 495, 496 (5th Cir. 1971); *In re Unterweser Reederei, Gmbh*, 428 F.2d 888 (5th Cir. 1970), *rev'd sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). This case should not be the fifth.

"[C]omity has long counseled courts to give effect, whenever possible, to the executive, legislative and judicial acts of a foreign sovereign so as to strengthen international cooperation." *Karaha Bodas*, 335 F.3d at 371. This is especially necessary "when prior steps in resolving a dispute have taken place in international fora." *Id.* That is precisely the circumstances here.

Multiple "judicial acts of a foreign sovereign" are at issue in this appeal: the English High Court's Interim ASI prohibiting Appellees from further litigating in Louisiana; the English High Court's orders extending the Interim ASI until resolution of the dispute; and the English High Court's scheduling order setting deadlines for evidentiary submissions in advance of the final hearing on January 26, 2026. Plus, the parties—and particularly Appellees—have taken significant "prior steps" towards resolving their dispute in that forum: they entered two consent orders in the High Court and a stipulation in the 14th Judicial District Court continuing the Interim ASI and delaying the Louisiana proceeding pending the January 2026 final hearing in London; and Appellees submitted their evidence to the English High Court in advance of the final hearing.

The district court failed to "give effect" to the English High Court's orders, as it was required to do. *See Karaha Bodas Co.*, 335 F.3d at 371. Instead, the district court was dismissive of the English High Court, the Interim ASI, and the sanctions required under English law for someone who violates a court order. *See* ROA.993, 998-99. That attitude towards the judicial acts of a foreign sovereign should not be tolerated, and it certainly was not valid reason to issue a preliminary injunction.

To make matters worse, the district court expressly overrode the English High Court's Interim ASI, issuing an international anti-suit injunction of its own that precludes Chubb Bermuda from continuing to litigate before the English High Court,

effectively halting the English High Court proceedings altogether. As a result, Appellees have used the United States' justice system to flout the authority of the English High Court—a result antithetical to the spirit of "international cooperation" that underpins this Court's longstanding comity precedents. *See Karaha Bodas*, 335 F.3d at 371. Those precedents have specifically emphasized that comity concerns are magnified when an "anti-suit injunction pose[s] significant ramifications for a treaty to which the United States [is] a signatory." *Ganpat*, 335 F.3d at 583; *see id.* at 591 n.19 (emphasizing that "U.S. courts ought to proceed carefully before ignoring treaties," even where—unlike here—United States is *not* party to treaty); *Karaha Bodas*, 335 F.3d at 373 (explaining adverse consequence to U.S. interests if U.S. courts fail to enforce obligations under the Convention).

To overcome these compelling comity interests requiring deference to the English High Court proceedings and enforcement of the English High Court's Interim ASI, Appellees bore the burden to show that the English High Court litigation was "vexatious or oppressive," which is the only basis upon which the district court could have justified an international antisuit injunction. "To determine whether proceedings in another forum constitute 'vexatious or oppressive' litigation that threatens the court's jurisdiction, the domestic court considers whether the following interrelated factors are present: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and

efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States." *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020). None are present here.

### 1.     No inequitable hardship results from litigating in England.

The English High Court proceedings do not cause any inequitable hardship to Appellees. The district court's contrary conclusion was based on its determination that "[t]he terms of the ASI are themselves oppressive [by] requiring plaintiffs to litigate all issues in this matter abroad and threatening jail time for anything less than strict compliance" and that allowing the English High Court action to proceed "would cause substantial inconvenience [and] unnecessary expense." ROA.982. But there is nothing oppressive, inequitable, or otherwise unfair about the Interim ASI or about forcing Appellees to proceed in their contractually agreed-upon forum.

Appellees are members of a sophisticated business organization that is well acquainted with litigation both domestically and abroad, and they are represented in the English High Court by established and competent London counsel, which has ably represented Appellees for over nine months in those proceedings. *Contra Ganpat*, 66 F.4th at 580 (finding inequity where an individual was forced to litigate against a foreign corporation in a foreign forum "where the individual lacks counsel and is instead forced to take legal advice from the corporation's own attorneys [who are] in direct conflict with the individual's interests").

The Policy, which Appellees voluntarily purchased from Chubb Bermuda, expressly includes an agreement to arbitrate disputes in London, so it is no surprise nor hardship to Appellees to abide by their contractual commitments—which is all that the Interim ASI and the English High Court proceedings require them to do. *Cf. Ganpat*, 66 F.4th at 582 (explaining that only "'*unwarranted* inconvenience and expense' can suffice to constitute hardship meriting an anti-suit injunction" (quoting *Kaepa*, 76 F.3d at 627) (emphasis added)). Indeed, Appellees consented to two extensions of the Interim ASI, agreed via stipulation to litigate the English High Court proceedings first, and litigated in that forum for eight months without attempting to terminate the Interim ASI or otherwise claiming that the foreign litigation worked an inequitable hardship on them.

And the threat of jail time for violation of a court order is not a unique or unduly oppressive feature of the Interim ASI; contemnors can be incarcerated for disobeying court orders in this country too. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994); *Topletz v. Skinner*, 7 F.4th 284 (5th Cir. 2021); *In re Dinnan*, 625 F.2d 1146 (5th Cir. 1980).

> 2.    *The English High Court proceedings further, rather than frustrate, resolution of this dispute.*

The English High Court proceedings do not frustrate or delay determination of the parties' dispute. To the contrary, the English High Court proceedings are entirely consistent with the policy of this forum (as embodied in the FAA's

implementation of the Convention) to uphold international arbitration agreements such as the one here, and to allow proceedings in the curial court—here, in London, at the seat of the arbitration—to take their course. Moreover, the English High Court proceedings began over nine months ago and were fast progressing toward a dispositive January 2026 hearing that would have resolved the dispute until Appellees improperly knocked it off track. In stark contrast, the suit here has barely progressed beyond Appellees' January 2025 attempt to add Chubb Bermuda to the case. Chubb Bermuda has not been properly served. And various preliminary motions, including Appellees' motion to remand and Chubb Bermuda's cross-motion to dismiss or stay, have yet to be resolved. Put simply, a speedy and efficient determination is happening in the English High Court, not here.

> 3.  *There are significant differences between this action and the English High Court proceedings.*

In issuing the international antisuit injunction, the district court assumed that this case and the proceedings before the English High Court are essentially the same. That assumption was incorrect. The English High Court proceedings were initiated to enforce the Appellees' express agreement to arbitrate any coverage dispute in London. The Louisiana action, on the other hand, involves substantive coverage claims under the Policy. Stated differently, the proper order of operations is for the English High Court to first decide whether the Policy's arbitration agreement is enforceable. If it is, the coverage issues will be resolved in a London arbitration. If

it is not, the parties can litigate the issue of which court should resolve the coverage dispute at that time. Notably, Appellees agreed via stipulation to this exact process before abruptly reversing course. The issue of arbitrability was only raised in the Louisiana action as a defense after Appellees reneged on their promise to let the English High Court decide the question. So, to the extent there is overlap there, this litigation is duplicative of the English one, not the other way around.

*  *  *

In sum, international comity principles compel respect for the English High Court's authority and Interim ASI, and there is no countervailing concern that the English High Court proceedings are vexatious or oppressive. This Court should therefore conclude that the district court abused its discretion in issuing an international antisuit injunction, vacate the injunction, and remand with instructions to stay the case pending resolution of the English High Court proceedings in accordance with the Interim ASI.

### C.    *Appellees cannot succeed on the merits because they failed to prove personal jurisdiction over Chubb Bermuda.*

This Court can resolve this appeal on either or both of the foregoing grounds, but it is also true that an "injunction is always improper if the district court lack[s] jurisdiction." *NAACP v. Tindell*, 95 F.4th 212, 216 (5th Cir. 2024). For that reason, when "a challenge to jurisdiction is interposed on an application for a preliminary injunction, the plaintiff is required to adequately establish that there is at least a

reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 543 (5th Cir. 2023) (cleaned up) (citation omitted). Appellees did not and cannot make that showing.

The district court lacked personal jurisdiction over Chubb Bermuda because Chubb Bermuda does not have sufficient minimum contacts with Louisiana. "Personal jurisdiction exists where the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). "In this case, these two inquiries merge into one because Louisiana's long-arm statute permits jurisdiction coterminous with the scope of the Due Process Clause." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000); *see also* LA. STAT. ANN. § 13:3201(B). There are two forms of personal jurisdiction that satisfy Due Process: general and specific personal jurisdiction. Neither exists here.

Beginning with general personal jurisdiction, Appellees concede that Chubb Bermuda is incorporated in Bermuda and has its principal place of business in Bermuda. ROA.329. Thus, there is no general jurisdiction over Chubb Bermuda in Louisiana. *See Ethridge v. Samsung SDI Co.*, 137 F.4th 309, 314 (5th Cir. 2025) ("Because Samsung is neither incorporated in Texas nor has its principal place of business there, there is no general jurisdiction over Samsung in Texas.").

To establish specific personal jurisdiction, Appellees were required to show that Chubb Bermuda "'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted). This inquiry focuses on Chubb Bermuda's contacts with Louisiana itself, not Appellees' contacts with Louisiana or even Chubb Bermuda's contacts with Appellees. In the Supreme Court's words, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" itself, not "the plaintiff's contacts with the forum" or "the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). No such relationship between Chubb Bermuda and Louisiana exists here.

Chubb Bermuda does not have (and has never had) a license to do business in Louisiana. ROA.726-27. Chubb Bermuda does not have (and has never had) any offices, officers, agents, employees, brokers, claims adjusters, or other representatives in Louisiana. *Id.* Chubb Bermuda does not advertise in Louisiana, solicit insurance applications or insurance policies from policyholders in Louisiana, or negotiate policy terms or conditions in Louisiana. *Id.* And Chubb Bermuda does not issue or deliver insurance policies in Louisiana. *Id.*

Appellees and the Policy were no exception. Appellees approached Chubb Bermuda through their Bermuda-based brokers, who negotiated the Policy solely in

Bermuda. The Policy was issued and delivered in Bermuda. Chubb Bermuda performed all underwriting and claims-handling decisions relating to the Policy in Bermuda. And no Chubb Bermuda employee has traveled to Louisiana to meet with Appellees or their counsel regarding their claims for coverage under the Policy.

True, the Policy insures properties located in Louisiana (and many other states). But that makes no difference to the jurisdictional analysis. To the contrary, it is well-established that specific jurisdiction cannot be predicated on the mere fact that an insurance company insures risks in a particular state. *See, e.g.*, *Shambaugh & Son, LP v. Steadfast Ins. Co.*, 91 F.4th 364, 373–74 (5th Cir. 2024) ("[A]n insurer's securing an insurance contract with a Texas resident 'does not, on its own, establish minimum contacts between the insurer and Texas.'" (quoting *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 544 (5th Cir. 2019)); *see also Burger King*, 471 U.S. at 478 ("[A]n individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum.").

Considering the above, Appellees failed to carry their burden of showing that Chubb Bermuda purposely directed its activities toward Louisiana or otherwise purposely availed itself of the privileges of conducting business in this State. *See, e.g.*, *Monkton Ins. Ltd. Servs. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) (holding that a defendant does not have minimum contacts with a state when it does not have a

physical presence in the state, did not conduct business in the state, and the contract underlying the business transaction at issue was not signed in the state and did not call for performance in the state). And absent personal jurisdiction over Chubb Bermuda, the district court lacked any authority to enjoin Chubb Bermuda from litigating the English High Court proceedings and enforcing the English High Court's Interim ASI.

## II.    The remaining traditional preliminary injunction factors also weigh strongly against a preliminary injunction.

The district court erred in even considering the remaining elements of the traditional preliminary injunction test—irreparable injury, balance of harms, and the public interest. *See Ganpat*, 66 F.4th at 584. But to the extent they are applicable, they weigh heavily against such relief here.

To start, Appellees failed to demonstrate that they would have suffered irreparable injury absent the preliminary injunction. *See, e.g.*, *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). The district court found that Appellees would be irreparably harmed by having to litigate the enforceability of the Policy's arbitration provision in the English High Court instead of in Louisiana. ROA.980. But Appellees agreed—four separate times—to litigate this issue in England: first through the Policy's arbitration provision, then via two consent orders in the English High Court, and finally by a stipulation in the 14th Judicial District Court. What's more, Appellees actively litigated before the English High Court, submitting their

evidence in advance of the final hearing and an application for substantive relief to the English High Court before suddenly trying to enjoin those proceedings from continuing two days later. There is no irreparable injury from holding Appellees to their agreements and from forcing them to proceed in a forum where they litigated for eight months.

The public interest strongly favors enforcement of Chubb Bermuda's rights under the Convention, an important treaty obligation of the United States itself. The Convention reflects this Nation's "strong belief in the efficacy of arbitral procedures for the resolution of international commercial disputes." *Mitsubishi Motors*, 473 U.S. at 631; *see also* U.S. Const. art. VI, cl. 2 ("[A]ll Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). And as this Court has recognized, "the utility of the Convention in promoting the process of international commercial arbitration depends upon the willingness of national courts to let go of matters they normally would think of as their own." *Karaha Bodas*, 335 F.3d at 373 n.62 (quoting *Mitsubishi Motors*, 473 U.S. at 639 n.21). The district court and the Louisiana state court may consider themselves the proper fora for litigating Appellees' claims, but Appellees themselves agreed to a forum of London

arbitration, and United States' obligations under the Convention require enforcement of that choice. There is a strong national interest in adhering to those obligations.

Finally, the balance of equities favors Chubb Bermuda as well. Chubb Bermuda will be severely harmed if it cannot depend on the enforcement of its contracts or litigate in the agreed-upon forum. With Appellees' consent and approval, the English High Court has set a final hearing for January 26, 2026. Pursuant to the English High Court's scheduling order, Appellees have already submitted their evidence in advance of that hearing. But the district court's preliminary injunction precludes Chubb Bermuda from putting in any evidence of its own in the English High Court proceeding and jeopardizes the January 26 hearing date. The equities thus favor a prompt and determinative decision by this Court to put the English High Court proceedings back on track and to ensure that the January 26 final hearing goes forward as scheduled.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction and, in accordance with Chapter 2 of the FAA and binding principles of international comity, remand with instructions for the district court to stay the case pending resolution of the English High Court proceedings. Alternatively, the Court should vacate the preliminary injunction and remand with instructions for the district court to dismiss the case for lack of personal jurisdiction over Chubb Bermuda.

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso
Janelle E. Sharer
Aaron M. Steeg
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone:  504-589-9700
Facsimile:  504-589-9701
jbarrasso@barrassousdin.com
jsharer@barrassousdin.com
asteeg@barrassousdin.com

Jonathan D. Hacker
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5285
jhacker@omm.com

Paul R. Koepff
Mina M. Beshara
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
Telephone: 212-710-3900
paul.koepff@clydeco.us
mina.beshara@clydeco.us

*Attorneys for Defendant-Appellant*
*Chubb Bermuda Insurance Ltd.*

## CERTIFICATE OF SERVICE

I certify that on October 31, 2025, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Judy Y. Barrasso
Judy Y. Barrasso

*Attorney for Defendant-Appellant*
*Chubb Bermuda Insurance Ltd.*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) because it contains 8,375 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

2.     This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, with 12-point Times New Roman font used for footnotes pursuant to 5th Cir. R. 32.1.

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso

*Attorney for Defendant-Appellant*
*Chubb Bermuda Insurance Ltd.*